UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BRYAN STANLEY,**

    **Plaintiff,**

    v.

    Case No. 2:22-cv-1783
    **JUDGE EDMUND A. SARGUS, JR.**
    Magistrate Judge Chelsey M. Vascura

**HISTORIC NEWARK BASKET, LLC,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff Bryan Stanley's Motion for Judgment on the Pleadings on Counts II and III of Defendant Historic Newark Basket, LLC's ("Defendant" or "HNB") Counterclaims (ECF No. 12), HNB's Memorandum in Opposition (ECF No. 13), and Plaintiff's Reply (ECF No. 14). For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.

### I. BACKGROUND

Plaintiff's Complaint and HNB's counterclaims largely arise from the breakdown of their contractual relationship and the events that followed HNB's decision to keep, rather than sell to Plaintiff, the historic Longaberger Basket Building (the "Property"). (Pl. Compl. ¶¶ 1, 23–28, ECF No. 1; Def. Compl. ¶¶ 50, 65–72, ECF No. 5.)

The parties entered into a purchase agreement in June 2021, in which HNB agreed to sell the Property to Plaintiff for $5,500,000.00. (Pl. Compl. ¶¶ 12–14, 24, ECF No. 1; Def. Compl. ¶¶ 12–14, 24, ECF No. 5.) This purchase agreement placed certain obligations on HNB, such as requiring HNB to complete the following tasks prior to closing: (1) power wash the building, (2) remove dead vegetation and debris in the parking lot, and (3) remove any mold in the building.

(Pl. Compl. ¶ 13, ECF No. 1; Def. Compl. ¶ 13, ECF No. 5.) On June 11, 2021, the parties executed an addendum to the purchase agreement, which modified certain purchase terms and set a closing date of February 15, 2022. (Pl. Compl. ¶ 14, ECF No. 1; Def. Compl. ¶ 14, ECF No. 5.)

Plaintiff never closed on the Property, and each party offers their own explanation as to why. Plaintiff alleges that Defendant backed out of the deal following Governor DeWine's January 21, 2022 announcement that Intel Corporation had selected a site in Licking County as the future home for its most advanced semiconductor manufacturing plant, which likely served to increase the value of the Property. (Pl. Compl. ¶ 22, ECF No. 1.) Plaintiff alleges further that HNB materially breached their contract by failing to power wash the building, remove dead vegetation and debris from the parking lot, remove mold from the building, and then demand that Plaintiff close on the building even though the mold remained. (*Id.* at ¶¶ 16–18, 21.)

In contrast to Plaintiff's allegations, HNB asserts that Plaintiff breached the terms of their contract due to Plaintiff's failure to provide funds and close on the Property by February 15, 2022. (Def. Compl. ¶¶ 48 55, ECF No. 5.) HNB also maintains that it did power wash the building, remove vegetation and debris, and treat the building for mold. (*Id.* at ¶ 19.)

On March 25, 2022, Plaintiff filed a single-count Complaint against HNB, alleging breach of contract. (ECF No. 1.) On April 14, 2022, HNB filed its Answer and contemporaneously asserted three counterclaims against Plaintiff: fraudulent/intentional misrepresentation (Count I), defamation (Count II), and abuse of process (Count III). (Def. Compl. ¶¶ 65–72, ECF No. 5.)

On July 25, 2022, pursuant to Federal Rule of Civil Procedure 12(c), Plaintiff filed his Motion for Judgment on the Pleadings on Counts II and III of Defendant's Counterclaims. (ECF No. 12.) HNB timely filed its response (ECF No. 13), to which Plaintiff replied (ECF No. 14). The motion is ripe for review.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review for a Rule 12(c) motion for judgment on the pleadings is identical to the standard for a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). To state a claim upon which relief may be granted, plaintiffs must satisfy the pleading requirements set forth in Rule 8(a). While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying the plausibility standard articulated in *Twombly*). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 55) (internal quotations omitted).

## III. DISCUSSION

Plaintiff moves for partial judgment on the pleadings, arguing that Counts II and III of HNB's claims lack any legal basis. (ECF No. 12 at 1.) First, Plaintiff argues that the Court should enter judgment in its favor on HNB's defamation Counterclaim (Count II) because Ohio's litigation privilege provides absolute immunity to Plaintiff for statements made during judicial proceedings. (*Id.*) Second, Plaintiff argues HNB's abuse of process claim fails because HNB's

3

counterclaim fails to allege that (1) Plaintiff brought the initial lawsuit with probable cause and (2) Plaintiff had an ulterior motive in filing suit. (*Id.*) The Court will address each argument in turn.

### A. HNB's Defamation Counterclaim

Plaintiff argues—and the Court agrees—that Ohio's absolute privilege for statements made in judicial proceedings protects Plaintiff from HNB's defamation counterclaim. (*Id.* at 3-5.)

Under Ohio law, a statement made in a pleading is afforded absolute immunity in judicial proceedings if it "bears some reasonable relation to the judicial proceeding in which it appears." *City of Dayton v. A.R. Envtl., Inc.*, 886 F. Supp. 2d 775, 781 (S.D. Ohio May 21, 2012) (quoting *Surace v. Wuliger*, 495 N.E.2d 939, 942–43 (Ohio 1986)).

Here, paragraph 18 of the Complaint contains the alleged defamatory statement: "Historic Newark Basket did not remove the mold from the building as it promised." (ECF No. 1 at ¶ 18.) The question then, is whether this statement "bears some reasonable relation to the judicial proceeding in which it appears." *See Surace*, 495 N.E.2d at 942–43. If so, the statement is absolutely privileged. The Court finds that this statement "bears some reasonable relation to the judicial proceeding in which it appears." Whether HNB promised to remove the mold from the building and whether such removal actually occurred are central aspects of Plaintiff's breach of contract claim. (*See* Compl. ¶¶ 1, 18-22, 28, ECF No. 1.)

But this does not end the Court's analysis. HNB asserts that Plaintiff cannot rely on the litigation privilege because Plaintiff and his attorney "have used the lawsuit to publish the lawsuit and the false statements contained therein to multiple news stations and newspapers." (Opp'n at 4, ECF No. 12.) According to HNB, liability attaches "when someone goes to the newspaper with the lawsuit and asks the newspaper to write an article," which Plaintiff and his counsel have

4

allegedly done here.[1] (*Id.*) HNB, however, fails to direct the Court to any caselaw indicating that such a maneuver waives the litigation privilege. And what caselaw the Court has found on this issue undermines HNB's position.

Although the Supreme Court of Ohio has yet to directly address this question, its decision in *Am. Chem. Soc'y v. Leadscope, Inc.*, provides the Court with useful guidance. 133 Ohio St. 3d 366 (Ohio 2012). In *Am. Chem. Soc.*, the court was asked whether statements made by plaintiff's counsel concerning plaintiff's motivation in suing the defendant, which were published in a newspaper article, constituted defamation. *Id.* at 390. Before answering, the court noted that, when considering whether a defamatory statement is actionable, "'a court must review . . . the totality of the circumstances' and . . . 'read[] the statement[] . . . in the context of the entire [publication] to determine whether a [reasonable] reader would interpret [it] as defamatory.'" *Id.* at 389 (quoting *Mann v. Cincinnati Enquirer*, 2010 Ohio App. LEXIS 3380, *7 (Ohio Ct. App. 2010). The court then analyzed the defamatory statements in the article, finding them not defamatory as a matter of law because, *inter alia*: (1) "[t]he alleged defamatory statements made by ACS's outside counsel in the article pertained to ACS's intent in filing the lawsuit," and (2) "the lawsuit was not under seal, . . . the complaint was available to the public," and "[t]he public has a legitimate, constitutionally protected interest in judicial proceedings . . . ." *Id.* at 390–91.

After finding that the challenged statements failed to give rise to a defamation claim, the court expounded on the limits of liability for public statements made by attorneys concerning their pending litigation:

---

[1] Admittedly, this is a generous reading of HNB's allegations. HNB's allegations simply state that "Stanley, and his attorney, have used the lawsuit to publish the lawsuit and the false statements contained therein to multiple news stations and newspapers." (ECF No. 5 at ¶ 63.) Notably absent from HNB's allegations are any alleged facts stating that Plaintiff directly contacted newspapers or news stations to facilitate publication of the articles concerning the initial suit.

> We make clear that Ohio law imposes no blanket prohibition on an attorney's communications to the media. Attorneys and their clients retain a panoply of First Amendment rights and are free to speak to the public about their claims and defenses provided that they do not exceed the contours of protected speech and ethical rules that impose reasonable and necessary limitations on attorneys' extrajudicial statements. *See* Prof.Cond.R. 3.6 ("A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter"). Thus, while we do not muzzle an attorney representing a party in a proceeding, attorneys are not given carte blanche to defame others under the guise of litigation.

*Id.* at 392.

Although the court never speaks to the litigation privilege, the court's recognition that "attorneys and their clients" may lawfully make non-materially prejudicial public statements about their claims and defenses guides the Court's hand here. Accordingly, an attorney and her client may communicate the contents of the client's complaint to news outlets without incurring liability so long as these communications do not have a substantial likelihood of materially prejudicing a proceeding in the matter.

Ohio's Second District Court of Appeals agrees. In a case with facts more closely resembling the facts before this Court, the Second Circuit reversed the trial court's decision finding that a law firm waived its litigation privilege by transmitting the alleged defamatory statements to a reporter, which were then published in an online news article. *Horenstein, Nicholson & Blumenthal, L.P.A. v. Hilgeman*, 178 N.E.3d 71, 94, 105 (Ohio Ct. App. 2021). In reaching this decision, the Second District recognized that "removing the privilege for simply transmitting a complaint and explaining the litigation would undermine the policy supporting the litigation privilege, especially when the information disclosed is a matter of public record anyway." *Id.* at 99. This conclusion makes sense: "'In the age of digital communication, it is illogical to protect allegations in a publicly filed complaint but not repetition or explanation of those same allegations

6

outside the courthouse.'" *Id.* (quoting *Helena Chem. Co. v. Uribe*, 2012 N.M. LEXIS 246, *26 (N.M Ct. App. 2011). And "'[t]he harm resulting to a defamed party from delivery of pleadings in a lawsuit to the news media could demonstratively be no greater than if the news media found the pleadings on their own[,] and advising the media that a lawsuit had been filed, including a basic description of the allegations, has no practical effect different from providing the pleadings to the media.'" *Id.* (quoting *Helena*, 2012 N.M. LEXIS 246, at *27).

Importantly, the Second District held that this approach to the absolute privilege doctrine aligned with the Supreme Court of Ohio's holding in *Am. Chem. Soc.*:

> [T]he opinion in *Am. Chem. Soc.* does dictate the approach to be followed here. Attorneys are permitted to make statements to outside sources like a newspaper, and a client's liability for such is limited. *Am. Chem. Soc.* says nothing about providing a copy of a complaint to a reporter or other outside source, but given the court's statements, it is hard to imagine that this would be prohibited. As noted, clerks' offices contain public records that anyone can access, unless records are filed under seal.

*Id.* at 101. The Second District then applied *Am. Chem. Soc.* to its facts, finding not only that the absolute privilege protected the law firm's extrajudicial communications, but also that the challenged article itself was not defamatory. *Id.* at 103, 105. Critical to the latter finding was that the article simply summarized the case and the law firm's allegations. *See id.* at 103 ("almost every sentence in the article either quotes the complaint or uses the word 'alleged' or similar terms to describe what the complaint was about. The statements of [the firm's] counsel . . . pertained to [the firm's] intent in filing the lawsuit.").

Against this backdrop, the Court finds that Plaintiff did not waive the litigation privilege by allegedly sharing this lawsuit with the press. While HNB's opposition brief argues that "[t]here is a tremendous difference between a newspaper doing their own research and finding a lawsuit and writing an article about it, and when someone goes to the newspaper with the lawsuit and asks

7

the newspaper to write an article," Ohio caselaw says just the opposite. *See Horenstein*, 178 N.E.3d at 99 ("The harm resulting to a defamed party from delivery of pleadings in a lawsuit to the news media could demonstratively be no greater than if the news media found the pleadings on their own[,] and advising the media that a lawsuit had been filed, including a basic description of the allegations, has no practical effect different from providing the pleadings to the media.") (quoting *Helena*, 2012 N.M. LEXIS 246, at *27). Moreover, removing the privilege in light of the Complaint's publicly accessible nature would serve only to "undermine the policy supporting the litigation privilege." *Id.*

Finally, the content of the publicly disseminated statement itself—that HNB "did not remove the mold from the building as it promised"—falls far short of creating a "substantial likelihood of materially prejudicing" this proceeding. *See Am. Chem. Soc.*, 133 Ohio St. 3d at 392. This statement arises in the context of the Complaint, signaling to a reasonable reader that it is merely an allegation pertaining to the basis of the Complaint, and therefore cannot support a defamation claim. *See Horenstein*, 178 N.E.3d at 103 (finding purportedly defamatory allegations insufficient largely because "almost every sentence in the article either quotes the complaint or uses the word 'alleged' or similar terms to describe what the complaint was about. The statements of [the firm's] counsel . . . pertained to [the firm's] intent in filing the lawsuit."). Thus, given how Ohio courts have consistently protected similar extrajudicial statements concerning ongoing litigation, the Court holds that Plaintiff has not waived the litigation privilege; Plaintiff's Motion for Judgment on the Pleadings as to HNB's defamation claim (Count II) is **GRANTED**.

### B. HNB's Abuse of Process Counterclaim

Plaintiff also seeks an entry of judgment in its favor on HNB's abuse of process counterclaim (Count III). (ECF No. 12 at 6-8.) Ohio recognizes a distinct tort for abuse of process.

8

To establish such a claim, a party "must show that (1) a legal proceeding has been commenced in proper form and with probable cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior motive for which it was not designed; and (3) direct damage has resulted from the wrongful use of process." *Gillman v. Schlagetter*, 777 F. Supp. 2d 1084, 1098 (S.D. Ohio 2010) (citing *Hahn v. Star Bank*, 190 F.3d 708, 718 (6th Cir. 1999) (quoting *Yaklevich v. Kemp, Schaeffer, & Rowe Co.*, 626 N.E.2d 115 (Ohio 1994))). Here, Plaintiff argues that HNB's allegations fail to satisfy the first two elements of an abuse of process claim.

      **a. Probable cause**

Plaintiff argues that the first element—that "a legal proceeding has been commenced in proper form and with probable cause"—is not satisfied by HNB's pleadings. The Court agrees.

"Abuse of process will not lie for the wrongful initiation of an action but only for the improper use, or 'abuse' of an action." *Gillman*, 777 F. Supp. 2d at 1099 (citing *Gliatta v. Tectum, Inc.*, 211 F. Supp. 2d 992, 1010 (S.D. Ohio 2002)). Thus, "a plaintiff cannot base an abuse of process claim upon the assertion that an action was improperly initiated." *Id.* But this is exactly what HNB's counterclaim alleges: "*The entire Complaint lacks any probable cause* as it is undisputed that Stanley never met any inspection deadlines and never had any expert determine there was mold at the property." (ECF No. 5 at ¶ 70 (emphasis added); *see also id.* at ¶ 22 (asserting that "Plaintiff's claims are frivolous" and "are not warranted under existing law, and/or cannot be supported by good faith arguments").) This is fatal to HNB's counterclaim.

In an attempt to rescue its claim from an unfavorable judgment, HNB cites to several statements contained in Plaintiff's Complaint and HNB's Answer. First, HNB argues that Plaintiff's allegations contained in the Complaint demonstrate that Plaintiff filed his action with probable cause. (ECF No. 13 at 6.) Next, HNB directs the Court's attention to its Answer, in which

9

HNB admitted that the Purchase Contract was once enforceable. (*Id.* at 7.) Given this admission, coupled with Plaintiff's Complaint, HNB contends that it has satisfied the first element of an abuse of process claim.

HNB's position is without merit. Indeed, this Court has rejected a similar argument in *Moore v. Feldman*, 2017 U.S. Dist. LEXIS 39855, *8 (S.D. Ohio Mar. 20, 2017). There, despite failing to allege that plaintiff initiated his action with probable cause, defendant asserted that his abuse of process counterclaim sufficiently alleged this element because "he acknowledge[d] the existence of a bona fide dispute between the parties regarding the sale of magic-related artifacts and because he has not filed any motions challenging the sufficiency of the complaint under Rule 12." *Id.* at 10 (citing defendant's opposition brief). Nevertheless, this Court dismissed defendant's abuse of process claim, finding that his statements outside his counterclaim could not save the counterclaim from the statements *within*. *Id.* at *9 (noting that Defendant characterized plaintiff's claims as "frivolous" or having been "falsely assert[ed]").

Here, HNB's position is even less compelling. Whereas the defendant's counterclaim in *Moore* challenged certain claims as "frivolous" or being "falsely assert[ed]," HNB's counterclaim explicitly states that Plaintiff's "entire Complaint lacks any probable cause." The Court cannot ignore this unequivocal allegation. Accordingly, the Court finds that HNB has failed to sufficiently plead the first element that Plaintiff brought suit in proper form and with probable cause. *See Gunaris v. Holiday Lakes Prop. Owners Ass'n*, 1999 Ohio App. LEXIS 404, *9 (Ohio Ct. App. 1999) (affirming dismissal of claim for abuse of process where appellants alleged that the initiation of the initial complaint against them was "without probable cause").

### b. Ulterior motive

While the Court's ruling on the first element of HNB's abuse of process counterclaim is dispositive, the Court will also address the second challenged element—that Plaintiff initiated suit in an attempt to accomplish an improper purpose for which it was not designed. HNB's pleadings on this element also fall short.

"[T]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Robb v. Chagrin Lagoons Yacht Club*, 662 N.E.2d 9, 14 (Ohio 1996). "Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." *Id.* On the other hand, a claim for abuse of process does not arise "when a party uses the court to pursue a legal remedy that the court is empowered to give." *Sivinski v. Kelley*, 2011 Ohio App. LEXIS 1821, *16 (Ohio Ct. App. 2011).

HNB's counterclaim states, "Stanley's entire Complaint is an abuse of process for an ulterior motive: to convince HNB to re-engage in an additional extension for Stanley to purchase the Property for less money, knowing that Stanley did not close on the Property on February 15, 2022, as the Second Addendum required." (ECF No. 5 at ¶ 69.)

Plaintiff argues that HNB's counterclaim fails to satisfy the ulterior-motive element because the motive for Plaintiff's suit is to force HNB to perform under the Purchase Contract. In other words, there can be no abuse of process because Plaintiff is "use[ing] the court to pursue a legal remedy that the court is empowered to give." *See Sivinski*, 2011 Ohio App. LEXIS 1821, at *16. HNB responds by citing to the admitted facts in the record establishing that, on multiple occasions, Plaintiff failed to close on the property. (ECF No. 13 at 9.) Given these admissions, the

11

argument goes, an award of specific performance is inappropriate in this case and therefore Plaintiff's reliance on the Court to get HNB to sell the property shows an ulterior motive.

The Court finds that HNB's counterclaim contains no factual allegations that would allow the Court to reasonably infer Plaintiff had an ulterior motive in filing this suit. Plaintiff's Complaint reveals his motive: to get HNB to perform under the Purchase Contract. Plaintiff requests specific performance, and the Court is able to order such a remedy. This does not engender an ulterior motive. Simply put, Plaintiff is *not* attempting "to achieve through use of the court that which the court is itself powerless to order." *See Robb*, 662 N.E.2d at 14. And even if specific performance is an inappropriate remedy in this action, as HNB's opposition brief suggests, this fact would be immaterial to the Court's analysis. Indeed, even if Plaintiff's *entire* claim is without merit, there can be no abuse of process claim provided that Plaintiff is merely pursuing a legal remedy that the Court is empowered to give. *See West Bend Mut. Ins. Co. v. Westfield Ins. Group*, 2013 U.S. Dist. LEXIS 140879, *11–12 (S.D. Ohio Sep. 30, 2013).

HNB also relies on an additional allegation in its counterclaim to establish Plaintiff's ulterior motive: "Stanley has been using this lawsuit to defame HNB and to hinder future attempts by HNB to develop, lease or sell the Property." (ECF No. 5 at ¶ 60.) This conclusory allegation, without more, fails to make plausible HNB's allegation that Plaintiff had an ulterior motive in bringing his lawsuit. Accordingly, HNB fails to plead the second element of its claim for abuse of process. *See Graham v. Best Buy Stores, L.P.*, 298 F. App'x 487, 497 (6th Cir. 2008) ("An abuse-of-process claim will not survive a motion to dismiss when it is supported only by 'conclusory allegations regarding the defendants' ulterior motives with no facts to support those contentions.'") (quoting *Hahn v. Star Bank*, 190 F.3d 708, 718 (6th Cir. 1999); *see also Martin v. Insight Commens. Co., LP*, No. 2:10-cv-537, 2011 U.S. Dist. LEXIS 39110 (S.D. Ohio Jan. 26, 2011)

(adopting Report and Recommendation finding the plaintiff failed to plead what the ulterior motive was and failed to plead facts that would allow the Court to reasonably infer an ulterior motive); *Wolfe v. Little*, No. 2001 Ohio App. LEXIS 1902, *8 (Ohio Ct. App. 2001) ("Appellants made a bare allegation that Appellees committed the above three acts with the ulterior purpose to deprive them of their right to due process. However, Appellants were required to allege facts demonstrating that these acts were committed for that ulterior purpose.").

In sum, given HNB's failure to adequately plead the first and second element of its abuse of process claim, Plaintiff's Motion for Judgment on the Pleadings as to HNB's abuse of process claim (Count III) is **GRANTED**.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Plaintiff's Motion for Judgment on the Pleadings on Counts II and III of Defendant's Counterclaims. (ECF No. 12.)

This case remains open.

**IT IS SO ORDERED.**

_____  _____
**DATE**  **EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**