UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRYAN STANLEY,

      **Plaintiff,**

   v.

HISTORIC NEWARK BASKET, LLC,

      **Defendant.**

Case No. 2:22-cv-1783
**JUDGE EDMUND A. SARGUS, JR.**
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff Bryan Stanley's Motion for Partial Summary Judgment on his breach of contract claim against Defendant Historic Newark Basket, LLC ("HNB") and HNB's counterclaim for fraud. (Pl. Mot., ECF No. 27.) The Court also considers herein HNB's Motion to Strike Stanley's Motion for Partial Summary Judgment. (Def. Mot., ECF No. 28.) For the reasons set forth below, the Court **GRANTS** Stanley's Partial Motion for Summary Judgment, and **DENIES** HNB's Motion to Strike.

## BACKGROUND

This case concerns a failed real estate transaction involving the historic Longaberger Basket Building (the "Property"). The facts and procedural background are set forth below.

**I. Factual Background**

   **A. The Contract**

In June 2021, Stanley offered to purchase the Property from HNB for $5.5 million. (Pl. Mot., ECF No. 27, at PageID # 162.) HNB accepted the offer. (*Id.* at PageID # 162–63.) The

1

Real Estate Purchase Contract included a list of "Contingencies" pursuant to Section 5. (Compl., ECF No. 1, at PageID # 11–12.)[1]

The Section 5 contingencies contain multiple actions that Stanley may take within a specified number of days. (*Id*.) These contingencies begin with a "use or waive" clause, stating that if Stanley does not give written notice by the specified date that a contingency was satisfied or that Stanley wishes to cancel the transaction, the contingency is waived. (*Id.* at PageID # 11.) The contingencies include a buyer's inspection, environmental inspection, property inspection, utilities connections, feasibility of developments, and zoning. (*Id.* at PageID # 11–12.)

The Parties then agreed to a series of amendments to the original contract, only two of which are at issue in this case: (1) the Parties' Counter Offer #1; and (2) the Second Addendum. Counter Offer #1 states, in relevant part, the following:

> Purchase price to be $5,500,000.00. Buyer to have 60 days to obtain financing.
>
> There will be no "Additional Terms and Conditions" as a continuation of paragraph 3.1.
>
> . . .
>
> Within 5 days of the contract being fully executed, Buyer shall deposit $50,000 with Seller's title company as an earnest money deposit. Language in section 16 of the purchase contract to apply with the earnest deposit.
>
> Seller to remove any mold in the building prior to closing.

(*Id.* at PageID # 9.)

Months later, the Parties agreed to the Second Addendum, thereby extending the closing date and requiring an appraisal of the Property. The Second Addendum stated:

---

[1] Although Stanley attaches the relevant contract documents to his Motion, the document stamps overlap with prior stamps from the Clerk. (*See, e.g.*, ECF No. 27-1, at PageID # 187–88.) Accordingly, the Court cites to the Complaint's exhibits—which are the same exhibits attached to Stanley's Motion—for ease of reference and readability.

> If the appraisal is for $5.5M or above, then all contingencies pursuant to Section 5 of the contract have been met and shall be removed and Buyer is obligated to close by February 15, 2022.
>
> . . .
>
> If the appraisal is less than $5.5M, then this contract extension is void.
>
> . . .
>
> All other terms to remain the same.

(*Id.* at PageID # 20.)  Stanley had the Property appraised, and the value was determined to be above the $5.5 million threshold.  (Def. Resp., ECF No. 29, at PageID # 243.)  Accordingly, the Parties agree that all Section 5 contingencies were waived, and the closing date was set for February 15, 2022.

### B.     Mold Issues on the Property

During the week before the final closing date—February 15, 2022—HNB claimed the mold had been remediated.  (Stanley Decl., ECF No. 27-1, at PageID # 184.)  One day prior to the closing date, however, Stanley's business partner Michael Heckmann visited the Property and observed mold.  (*Id.*; Heckmann Decl., ECF No. 27-2, at PageID # 224–25.)  Heckmann took three pictures of mold on the Property during his visit on February 14, 2022.  (*Id.* at PageID # 227–31.)  HNB provided a picture taken by a mold remediation company on February 16, 2022, which Heckmann also describes as showing mold on the wall of the Property.  (*Id.* at PageID # 225, 233.)

HNB does not provide evidence showing that all mold had been removed—nor does HNB argue that all mold had been removed.  (*See generally* Def. Resp., ECF No. 29.)  Instead, HNB provides a copy of an email Counsel for HNB sent to Stanley's representative stating that Great Lakes Restoration was at the Property in March of 2021 and July of 2021 to use chemicals on the mold.  The email states:

> I don't think at this juncture that we have a duty to prove that work was done an [sic] any issues of mold but nonetheless, Great Lakes Restoration was there in March and again in July of 2021. The employees utilized RMR-141 on any of the

3

areas of concern. I don't understand how this can be a problem on the day of closing.

(Def. Email, ECF No. 29-1, at PageID # 250.)

### C. Purchase Never Happens

After discovering mold in the building on the day prior to closing, the transaction fell through. (Exs. E–H to Stanley Decl., ECF No. 27-1, at PageID # 204–22.) The presence of mold led to Stanley's failure to obtain financing. (*Id.*)

Throughout the Parties' negotiations, Stanley repeatedly attempted to obtain financing and failed. (Stanley Decl., ECF No. 27-1, at PageID # 183–85.) Stanley initially worked with Quickline Capital Partners, Inc., prior to Quickline declining to finance Stanley's purchase. (*Id.* at PageID # 183.) Stanley then engaged The Arab Investment Company ("TAIC"), an overseas investor, and received preapproval notice in November 2021 through its authorized agent. (*Id.*) In the days leading up to the final closing date, Stanley was told by TAIC's agent that the funds were ready, but that Stanley was required to confirm that all of the Contract's requirements had been satisfied. (*Id.* at PageID # 184.) Stanley disclosed to his investor that not all mold had been removed from the Property. (*Id.*) Stanley's investor then charged Stanley and his business partner a fine and refused to fund the purchase because Stanley could not confirm all mold had been removed. (*Id.* at PageID # 185.)

Stanley made a final offer to salvage this real estate purchase, but HNB declined. Stanley requested that HNB pay the fine charged by his investor, that he be allowed to send in a professional to assess the extent of mold, and that if the cost to remove mold was $100,000 or less, the deal would close. (*Id.*) HNB declined, and litigation ensued. (*Id.*)

4

## II. Procedural Background

On March 25, 2022, Stanley filed a single-count Complaint against HNB, alleging breach of contract. (ECF No. 1.) On April 14, 2022, HNB filed its Answer and contemporaneously asserted three counterclaims against Plaintiff: fraudulent/intentional misrepresentation (Count I)[2], defamation (Count II), and abuse of process (Count III). (Def. Compl. ¶¶ 65–72, ECF No. 5.) The Court dismissed HNB's defamation and abuse of process counterclaims, leaving only Stanley's breach of contract claim and HNB's fraud counterclaim. (ECF No. 21.)

Stanley now moves for partial summary judgment on his breach of contract claim, seeking judgment in his favor on the elements of existence of a contract, HNB's breach, and his performance. (Pl. Mot., ECF No. 27.) Stanley does not move for summary judgment on the issue of damages. (*Id*.) Stanley also moves for summary judgment on HNB's counterclaim for fraud. HNB opposes Stanley's motion. (Def. Resp., ECF No. 29.) Stanley filed a reply in support of his motion. (Pl. Reply, ECF No. 30.) Stanley's motion is fully briefed and ripe for this Court's review.

Additionally, HNB moves to strike Stanley's motion for summary judgment. (Def. Mot., ECF No. 28.) Stanley opposes HNB's motion. (Pl. Response, ECF No. 31.) HNB did not file a reply, and its motion is ripe for this Court's review.

### STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by

---

[2] Although HNB's counterclaim labels this cause of action as "fraudulent/intentional misrepresentation," the Parties both refer to the counterclaim as "fraud" throughout their briefing. (ECF Nos. 27, 29, 30.) Because Ohio courts use "fraud" and "intentional misrepresentation" interchangeably, this Court will use the Parties' label of "fraud." *See, e.g.*, *Addison Holdings, LLC, v. Fox, Byrd & Co., P.C.*, 2022-Ohio-4784, ¶ 90, n.3 (Ohio App. 4th Dist. 2022).

5

demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993).  The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56).  When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.  *Tolan v. Cotton*, 572 U.S. 650, 651 (2014).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993).  In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

## ANALYSIS

HNB moves to strike Stanley's Motion for Summary Judgment.  Stanley moves for partial summary judgment on his breach of contract claim and summary judgment on HNB's fraud counterclaim.  The Court addresses each of these three issues in turn.

**I.     HNB's Motion to Strike**

HNB moves to strike Stanley's Motion for Summary Judgment on the grounds that the motion makes factual allegations that are not supported by evidence and lack citations to the record.  (Def. Mot., ECF No. 28.)  At the summary judgment stage, a party's assertion of undisputed fact must be supported by the record.  Fed. R. Civ. P. 56(c)(1).  HNB lists 17 of

Stanley's factual allegations that allegedly lack citations to any evidence in the case.  (Def. Mot., ECF No. 28, at PageID # 235–38.)  In response, Stanley lists the evidence—the declarations and exhibits attached to his Motion for Partial Summary Judgment—supporting each factual allegation.  (Pl. Resp., ECF No. 31, at PageID # 287–92.)  HNB did not file a reply in support of its Motion.

It appears that, rather than citing to evidence at the conclusion of each sentence containing a factual allegation in his Motion, Stanley merely cited to supporting evidence at the conclusion of each paragraph.  (*See* Pl. Mot., ECF No. 27.)  Although Stanley should have cited to supporting evidence at the end of each of his factual allegations, this is not a basis to strike his Motion.  It is apparent that Stanley supports his factual allegations with citations to the record.  Accordingly, HNB's Motion to Strike is **DENIED**.

**II.     Stanley's Breach of Contract Claim**

Ohio contract law applies to Plaintiff's breach of contract claim.  To prevail in an action for breach of contract, a plaintiff must prove "(1) a contract existed, (2) the complaining party fulfilled its contractual obligations, (3) the opposing party failed to fulfill its obligations, and (4) the complaining party incurred damages as a result of this failure."  *Nayyar v. Mount Carmel Health Sys.*, No. 2:10-CV-00135, 2013 WL 2418072, at *11 (S.D. Ohio June 3, 2013) (quoting *Marion Forum, L.L.C. v. Lynick Ents., Inc.*, 2012 WL 6571399, at *2 (Ohio 3d Ct.App. Dec. 17, 2012)).  To establish the third requisite element, a plaintiff must be able to point to a particular contract provision or obligation that was breached.  *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012).  Stanley moves for summary judgment on all elements other than damages.  (Pl. Mot., ECF No. 27, at PageID # 162.)

This case is unique in that Stanley admittedly never fully performed his obligation of the contract—purchasing the Property.[3]  However, Stanley argues there was no need for him to purchase the Property because he was excused from purchasing it due to HNB's material breach. *Cap. City Energy Grp., Inc. v. Kelley Drye & Warren, LLP*, 975 F. Supp. 2d 842, 860 (S.D. Ohio 2013) (quoting *Jackson v. State Farm Fire & Cas. Co.*, 461 Fed. App'x. 422, 426 (6th Cir. 2012)). Stanley argues that HNB's alleged failure to remove mold was a material breach of the Contract, thus discharging him from performance.

Accordingly, the Court analyzes Stanley's Motion for Partial Summary Judgment on his breach of contract claim as follows: (A) whether a contract exists; (B) whether HNB breached; and (C) whether HNB's alleged breach was material, such that Stanley was excused from performance.

### A. Existence of a Contract

The Parties agree that a Contract exists.  (Compl., ECF No. 1, at PageID # 3; Def. Answer, ECF No. 5, at PageID # 34.)  The Contract consists of the original Real Estate Purchase Agreement, as modified by Counter Offer # 1 and the Second Addendum.[4]  Thus, this element is indisputably met.

### B. Whether HNB Breached the Contract

To determine whether HNB breached the Contract, the Court must determine two things. First, Stanley must show that no genuine issue of material fact exists regarding HNB's obligation

---

[3] Stanley partially performed by paying a $50,000 earnest money deposit pursuant to Counter Offer #1.  (ECF No. 27-1, at PageID # 183.)

[4] There were other modifications to the Real Estate Purchase Agreement, but those are not at issue in this case.

8

to remove mold. Second, Stanley must demonstrate that no genuine issue of material fact exists regarding HNB's failure to fulfill that obligation.

### 1. Whether HNB had an Obligation to Remove Mold

The Parties' primary disagreement concerns whether HNB was obligated to remove mold. Stanley argues that Counter Offer #1's mold removal obligation remained with HNB throughout later addendums to the Contract, while HNB argues that it did not breach the Contract because it did not need to remove all mold from the building.

HNB argues that Stanley's affidavit asserts "for the first time ever that he required verification that mold was [re]moved in order to obtain financing." (Def. Mot., ECF No. 29, at PageID # 245.) Without citations to law or evidence, HNB argues that "there is no question that the requirement to have mold removed prior to closing is a contingency upon closing." (*Id.* at PageID # 246.) HNB then argues that, should Stanley dispute that the mold removal requirement was a contingency upon closing, then that dispute is one regarding material fact improper for resolution at the Summary Judgment stage. Rather, HNB argues, the dispute of whether the mold removal requirement was a Section 5 contingency must be decided by a jury. (*Id.*) The Court interprets HNB's "contingency upon closing" argument as arguing that Stanley could only bring this action if he closed on the property, *then* he found mold.

HNB repeatedly emphasizes that, when the Property was appraised at more than $5.5 million, "ALL CONTINGENCIES were removed." (*See generally id.*) The contingency removal provision of the Second Addendum, however, contained an important caveat: that "all contingencies *pursuant to Section 5 of the contract*" would be removed. (Second Addendum.) It follows that not all contingencies ever agreed to by the Parties would be removed, but only those made pursuant to Section 5 of the Contract. A crucial question before this Court, then, is whether

the mold removal obligation was made as a standalone obligation on the part of HNB, or whether it was a Section 5 contingency deemed satisfied once the Property was appraised at more than $5.5 million.

Stanley argues that the mold removal obligation was intended to be a standalone promise and not a Section 5 contingency. Stanley notes that the mold removal obligation did not explicitly reference Section 5 of the original contract. It simply stated: "Seller to remove any mold in the building prior to closing." (Compl., ECF No. 1, at PageID # 9.) Stanley argues that, should the Parties have intended the mold removal obligation to be a Section 5 contingency, they could have and would have referenced Section 5 explicitly. (Pl. Reply, ECF No. 30, at PageID # 254.) Indeed, in Counter Offer # 1, the Parties did reference other specific provisions when agreeing to the new obligations:

> There will be no "Additional Terms and Conditions" as a continuation of paragraph 3.1.
>
> . . .
>
> Within 5 days of the contract being fully executed, Buyer shall deposit $50,000 with Seller's title company as an earnest money deposit. Language in section 16 of the purchase contract to apply with the earnest deposit.

(Compl., ECF No. 1, at PageID # 9.) These new provisions referenced a specific paragraph and section of the original contract, while the mold removal obligation did not.

Stanley further argues that the context of the contract documents demonstrates the Parties did not intend for the mold removal obligation to be a Section 5 contingency. (Pl. Reply, ECF No. 30, at PageID # 256.) Stanley argues that the contingencies in Section 5 of the original contract include affirmative steps that he, as the buyer, may take within a certain amount of time. Among other things, these contingencies included an environmental site inspection, property inspection, and a feasibility study. (Compl., ECF No. 1, at PageID # 11–12.) These provisions are prefaced

by a terminate or waive election, whereby the buyer may terminate the Contract if he is not satisfied. (*Id.*) Stanley notes that the mold removal obligation does not provide him, as the buyer, with an option to exercise; rather, the mold removal obligation merely mentions the "seller" and does not include a terminate or waive remedy. (Pl. Reply, ECF No. 30, at PageID # 256–57.) Thus, Stanley argues that both the plain language of the contract documents and the context of Section 5 demonstrate that HNB's mold removal obligation was not intended to be a Section 5 contingency. (*Id.* at PageID # 257.)

This Court is persuaded by Stanley's arguments. As an initial matter, the Court disagrees with HNB that whether the mold removal obligation was a Section 5 contingency is a *per se* matter of disputed fact fit for a jury. Contract interpretation is a matter suitable for summary judgment, and the Court may ascertain the Parties' intent by examining the contract documents. *See Masco Corp. v. Wojcik*, 795 F. App'x 424, 427 (6th Cir. 2019) ("Under Ohio law, '[i]f a contract is clear and unambiguous, then its interpretation is a matter of law.'" (quoting *Nationwide Mut. Fire Ins. Co. v. Gunman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995))); *Stonebridge Operating Co., LLC v. Antero Res. Corp.*, 510 F. Supp. 3d 567, 574 (S.D. Ohio 2020) ("When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." (citing *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St. 3d 397, 404, 953 N.E.2d 285 (2011))).

Considering the Real Estate Purchase Contract, Counter Offer #1, and the Second Addendum, HNB unambiguously remained obligated to remove all mold from the Property for two reasons. First, as Stanley notes, the plain text of the mold removal obligation does not purport to make it a Section 5 contingency. The mold removal obligation does not reference Section 5. (Compl., ECF No. 1, at PageID # 9.)

11

Second, the context of Counter Offer #1 does not support HNB's proffered reading of the Contract. As Stanley notes, two other new provisions written into Counter Offer #1 reference particular sections of the original Real Estate Purchase Contract. Had the Parties intended to make the mold removal obligation a Section 5 contingency, the other provisions of Counter Offer #1 indicate the Parties would have referenced a particular section of the Real Estate Purchase Contract.

Because the mold removal obligation was not a Section 5 contingency, it was not affected by the Second Addendum. When the appraisal of the Property came in above $5.5 million, the Section 5 contingencies were removed; HNB's mold removal obligation remained.[5]

### 2. Whether HNB Removed Mold

Having found that the mold removal obligation was a standalone obligation and not a Section 5 contingency waived when the Property was appraised at more than $5.5 million in value, the Court now turns to whether Stanley is entitled to summary judgment on whether HNB breached by failing to remove mold.

Stanley offers his business partner's declaration, Michael Heckmann, who states that he witnessed mold on the Property on the day prior to the scheduled closing date. (Stanley Decl. ECF No. 27-1; Heckmann Decl., 27-2.) Mr. Heckmann attaches four pictures to his declaration and states that they show black mold on the walls inside the Property. (Heckmann Decl., ECF No. 27-2.) The pictures show black discoloration along the white walls of the Property, evidencing mold. (*Id.*)

---

[5] HNB also argues that Stanley was required to have the property inspected within twenty-five days of the Contract date, which Stanley did not do. (Def. Resp., ECF No. 29, at PageID # 246.) The property inspection clause from Section 5 of the Real Estate Purchase Contract is not at issue—the mold removal obligation from Counter Offer #1 is.

HNB counters that it hired a company who utilized a chemical treatment on the areas of concern. The sole evidence produced by HNB is a copy of one email its counsel sent to Stanley's real estate counsel stating that, in March and July of 2021, Great Lakes Restoration "utilized RMR-141 on any of the areas of concern." (Def. Email, ECF No. 29-1, at PageID # 250.) But HNB's email stops short of stating that all mold was removed. Beyond this partial email, HNB merely cites to its pleadings. As HNB notes, a party cannot rest on its pleadings once the moving party has met its burden of production. (Def. Resp., ECF No. 29, at PageID # 245) (citing *Anderson*, 477 U.S. at 248–49).

HNB does not offer evidence to show that there is a genuine issue of material fact. Once Stanley offered evidence sufficient to show that HNB did not remove all mold prior to closing, the burdened shifted to HNB to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). HNB's email—even if admissible as evidence—does not state that all mold was removed. (*See* Def. Email, ECF No. 29-1, at PageID # 250.) This distinction is critical because Counter Offer #1 explicitly states that seller will *remove* any mold prior to closing—merely attempting to remove mold does not satisfy the contractual obligation at issue. (Compl., ECF No. 1, at PageID # 9.) Therefore, even considering HNB's purported prior mold removal efforts as undisputed fact, HNB has presented no argument or evidence directly rebutting Stanley's evidence that mold was not removed, as required. HNB never states it removed all mold and does not contest the accuracy of the photos attached to Stanley's motion.[6] Accordingly, there is no issue of material fact as to whether HNB failed to remove mold. Based on the evidence presented, HNB failed to remove all mold.

---

[6] HNB also notes that Stanley does not have a mold expert. (Def. Resp., ECF No. 29, at PageID # 246–47.) HNB does not, however, cite to any legal authority, contractual provision, or other evidence that requires Stanley to have such an expert. (*See id.*)

### C. Whether Stanley was Excused from Performance of the Contract

It is undisputed that Stanley did not fully perform. Stanley's "performance" was the purchase of the Property, which he did not complete. Under Ohio law, however, Stanley may still advance a breach of contract claim if HNB's breach excused his performance because the breach was material. *Lamar Advantage GP Co. v. Patel*, 2012-Ohio-3319, ¶ 26 (Ohio App. 12th Dist. 2012) ("A 'material breach of contract' is a failure to do something that is so fundamental to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform." (quoting *Marion Family YMCA v. Hensel*, 2008 Ohio 4413, ¶ 7 (Ohio App. 3rd Dist. 2008))). Stanley argues that HNB's breach—failure to remove mold—excused his performance because it was material. He argues that a defendant cannot avoid liability for breach of contract by taking an act that frustrates the plaintiff's performance. (Pl. Reply, ECF No. 30, at PageID # 260) (citing *Suter v. Farmers' Fertilizer Co.*, 100 Ohio St. 403, 411 (Ohio 1919).)

To determine whether HNB's breach was material, Ohio courts apply the Restatement's five-factor test:

(1) The extent to which the injured party will be deprived of the benefit which he reasonably expected;

(2) The extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(3) The extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(4) The likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(5) The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

14

Rst.2d of Contracts § 241; *Rhodes v. Rhodes Indus., Inc.*, 595 N.E.2d 441, 447 (Ohio App. 3d Dist. 1991).

Stanley argues that each of these five factors weigh in favor of finding HNB's breach—the failure to fulfill its mold removal obligation—was material. First, Stanley argues that HNB's failure to remove mold deprived him of the expected benefit: the Property. (Pl. Mot., ECF No. 27, at PageID # 171.) He argues that reporting the failure to remove mold led his investor to withdraw funds, preventing the transaction. (*Id.*) Second, Stanley argues he cannot be adequately compensated aside from a reward of damages. (*Id.* at PageID # 172.) Stanley's investor refused to fund the purchase, and HNB refused to pay the fine or permit additional inspection to determine the cost to remove mold. (*Id.*) Third, Stanley argues that finding material breach will not impose a forfeiture on HNB because HNB will not lose its interest in the Property. (*Id.* at PageID # 172–73.) Fourth, Stanley argues that there is no likelihood that HNB will cure its breach because HNB did not remove mold by the Contract's closing date, refused to allow Stanley to send a mold remediation expert to examine the Property, and claimed it did not have to remove the mold. (*Id.* at PageID # 173.) Finally, Stanley argues that HNB did not act with good faith because it disavowed its contractual obligation to remove mold and refused to permit Stanley to send a mold remediation expert onto the Property. (*Id.* at PageID # 173–74.)

HNB does not contest these particular factors or whether they weigh against finding a material breach. Rather, HNB argues that Stanley himself breached the Contract because he failed to close timely, he did not have a certified and qualified mold inspector, and he did not pay the Contract purchase price. (Def. Resp., ECF No. 29, at PageID # 246–47.) These arguments are more relevant to ascertaining whether a breach occurred, and because the Court has already found that a breach occurred, HNB's arguments are not well taken.

The Court agrees with Stanley that HNB's breach was material. Crucially, HNB's failure to remove mold resulted in a deprivation of Stanley's expected benefit of purchasing the property because it led to Stanley's investor pulling out of the transaction. Moreover, it was clear that HNB did not intend to remove all mold or permit Stanley's mold remediation expert to examine the Property. HNB's material breach excused Stanley's obligation to complete performance.

Because Stanley has demonstrated that HNB materially breached the Contract and there are no disputed material facts, Stanley is entitled to partial summary judgment on his breach of contract claim. Therefore, the Court **GRANTS** Stanley partial summary on his breach of contract claim.

### III. HNB's Fraud Counterclaim

Stanley also moves for summary judgment on HNB's fraud claim. (Pl. Mot., ECF No. 27, at PageID # 175.) As Stanley notes, "a claim of 'fraud cannot be predicated upon promises or representations relating to future actions or conduct.' Representations concerning what will occur in the future are considered to be predictions and not fraudulent misrepresentations." *Hancock v. Longo*, No. 98AP-1518, 1999 WL 816148, at *7 (Ohio Ct. App. Oct. 14, 1999) (quoting *Ass'n for Responsible Dev. v. Fieldstone Ltd. P'ship*, No. 16994, 1998 WL 785330, at *5 (Ohio Ct. App. Nov. 13, 1998)). However, one "who makes his promise of future action, occurrence, or conduct, and who at the time he makes it, has no intention of keeping his promise" may be liable. *Hancock*, 1999 WL 816148, at *7. Accordingly, Stanley may be liable for fraud if he had no true intention of obtaining financing at the time he stated that intention.

Moreover, fraud claims are generally barred where the claim arises from conduct relating to a contract. As Stanley notes, a party can only assert a tort claim based on the same actions as an alleged breach of contract claim if (1) the breaching party owes a duty independent from the

16

contract, and (2) the nonbreaching party suffers damages separate from those caused by the breach of contract. *Gold Craft Co. v. Ebert's Contr. & Remodeling, LLC*, No. 09AP-448, 2010-Ohio-3741, ¶ 21 (Ohio App. 10th Dist. Aug. 12, 2010). If a contract exists, the party is generally barred from asserting a tort claim based on conduct relating to that contract. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio App. 9th Dist. 1996).

Stanley argues that HNB's fraud claim fails because it has provided no evidence that Stanley lacked intent to secure financing at the time of his representations regarding the same and HNB alleged no damage separate from the failed closing of the property. Stanley presents sworn testimony regarding his prior potential investors, as well as copies of emails from TAIC showing fines that occurred as a result of Stanley's failure to assure his investors that all contractual obligations had been met. (Stanley Decl., ECF No. 27-1.) Accordingly, Stanley demonstrates that he intended to obtain financing. Stanley further argues that HNB has not alleged or presented any damage separate from his failure to purchase the Property pursuant to the Contract, so HNB cannot bring a fraud claim. (Pl. Mot., ECF No. 27, at PageID # 178.)

HNB argues that Stanley "fraudulently represented that he could obtain the monies necessary to purchase the Property" (Def. Resp., ECF No. 29, at PageID # 247), but HNB offers no citations to legal precedent and merely states that Stanley never presented actual financing or proof of funds. (*Id.* at PageID # 247.) While that may be true, HNB does not state why Stanley's failure to disclose evidence of financing precludes summary judgment on HNB's fraud claim. HNB does not address Stanley's arguments regarding the nonexistence of a fraud claim based on the same conduct giving rise to a breach of contract claim. Nor does HNB address the legal requirement that, for Stanley to be liable for fraud or intentional misrepresentation, Stanley must

17

have not intended to obtain financing *at the time* Stanley represented he did. HNB merely reiterates that Stanley never presented actual evidence of financing.

HNB does not identify any issues of material fact regarding Stanley's intent to obtain financing at the time he represented a plan to obtain financing. HNB alleges that "Stanley fraudulent [sic] represented that he could obtain the monies necessary to purchase the Property," but HNB's reliance on its counterclaim allegations is insufficient to defend against summary judgment. *Anderson*, 477 U.S. at 248–49.

Thus, because Stanley has presented evidence sufficient to demonstrate that he intended to obtain financing and therefore did not commit fraud, and HNB has failed to identify a genuine issue of material fact regarding his intent at the time of making those representations, Stanley is entitled to summary judgment on HNB's counterclaim.

The Court therefore **GRANTS** Stanley's motion for summary judgment regarding HNB's fraud claim. HNB's fraud counterclaim is dismissed.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Stanley's partial motion for summary judgment regarding his breach of contract claim and **GRANTS** Stanley's motion for summary judgment regarding HNB's fraud counterclaim. (ECF No. 27.) The Court **DENIES** HNB's motion to strike. (ECF No. 28.) The case remains open because the issue of Stanley's damages remains.

**IT IS SO ORDERED.**

**12/8/2023**                                                 s/Edmund A. Sargus, Jr.
**DATE**                                                     **EDMUND A. SARGUS, JR.**
                                                                 **UNITED STATES DISTRICT JUDGE**